Walter C. CLIFF, Plaintiff,

v.

INTERNAL REVENUE SERVICE,
Defendant.

No. 80 Civ. 1574 (RLC).

United States District Court,
S. D. New York.

March 10, 1981.

Cahill, Gordon & Reindel, New York City, for plaintiff; George Wailand and Charles A. Gilman, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; J. D. Pope, Asst. U. S. Atty., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

While familiarity with prior determinations in this case is presumed, a brief recapitulation of its procedural history may aid in understanding what is being decided today. Plaintiff Walter Cliff sought, pursuant to the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552, to compel the Internal Revenue Service ("IRS") to disclose certain documents for his use in advising clients. Responding to his FOIA request the IRS withheld certain documents, claiming that the withheld documents were exempt from FOIA disclosure. 5 U.S.C. § 552(b). After exhausting all administrative appeals, Cliff commenced this action to compel disclosure.

In the course of the litigation the parties resolved their disputes as to all but nine documents sought by plaintiff. They agreed to substitute cross motions for summary judgment in the place of several motions then pending or contemplated. In the decision of July 30, 1980, the IRS' claim

that those nine documents were exempt was upheld. Accordingly, defendant's motion for summary judgment was granted, and since the summary judgment motions were made on the supposition that the dispute involving the nine documents exhausted the claim, plaintiff's complaint was dismissed. *See Cliff v. IRS*, 496 F.Supp. 568 (S.D.N.Y.1980) (Carter, J.). However, while the above decision was under advisement, the IRS undertook a supplemental search of its files to ascertain if there were any other documents responsive to plaintiff's request.[1] On August 1, 1980, defendant notified Cliff that additional documents, potentially responsive to the original request, had been uncovered. Eventually, thirty-seven responsive documents were identified; twenty of these were turned over to plaintiff on September 26, 1980, defendant claiming no exemption with respect thereto, but the remainder was withheld as exempt from the Act's disclosure provisions. Specifically, the IRS asserts that the seventeen withheld documents are all "classic b(5) documents" —i.e., predecisional and deliberative, and therefore exempt under § 552(b)(5) of the Act.

Plaintiff has now moved for reargument, for relief from the judgment dismissing the complaint, to alter or amend the judgment, and for an *in camera* inspection of the newly found withheld documents. He has also moved for attorney's fees under the Act. The IRS opposes plaintiff's motion, moves for summary judgment regarding the newly found withheld documents and seeks a protective order allowing it not to answer plaintiff's interrogatories relating to the supplemental search.

Thus, the procedural posture of the matter at hand is unusual. While plaintiff's complaint was dismissed in the decision of July 30, 1980, the motions before the court

1. As part of the parties' agreement in May, 1980, to substitute summary judgment motions for other pending and contemplated motions, the IRS undertook to provide plaintiff with a formal representation that the documents originally identified as responsive to plaintiff's request were the only responsive documents, and

that in the event no such representation could be made, that the IRS would undertake a supplemental search. *See* Wailand Affidavit (in support of plaintiff's motion to alter or amend judgment, etc.), Ex.2 (letter of May 20, 1980, from Wailand to Assistant United States Attorney J. D. Pope).

at that time reflected the parties' supposition that only nine documents were at issue. In the meantime, the seventeen newly found and newly contested documents were located by the IRS pursuant to plaintiff's original request. To resolve whether the newly found documents are exempt will require, in effect, that plaintiff's previously dismissed complaint be re-instituted for the purposes of the instant matter. Accordingly, to allow the court to consider the exemption of the seventeen contested documents, plaintiff is granted relief from the judgment dismissing the complaint.

As is apparent from the affidavit of Ewan D. Purkiss, dated October 27, 1980, (the "Purkiss Affidavit") describing the contested documents, they fall into the following groups:

(a) Documents 1 through 5 (¶¶ 4–8, Purkiss Affidavit) consist entirely of staff opinions and recommendations concerning a draft of a proposed IRS Manual Supplement. Document 1 is a memorandum responding to the National Office's request that the proposed supplement be circulated to various District Directors for their comments. The author of Document 1 summarizes the District Director's responses, and adds his own opinions. Documents 2–4 are memoranda from the District Directors expressing the opinions summarized in Document 1. None of these documents was expressly adopted or incorporated by reference in a final agency opinion.

(b) Documents 6 through 12 are interoffice memoranda recording staff comments, criticisms, questions and suggestions about a second proposed Manual Supplement. Arguably segregable, non-exempt portions of Documents 7 and 11 were released to Cliff. The documents were generated prior to the agency's final decision whether or not to publish the draft in final form, and none of these documents was expressly adopted or incorporated by reference in an final agency opinion.

(c) Documents 13 and 14 record some of defendant's predecisional deliberations over a draft of a third proposed Manual Supplement (¶¶ 16 and 17, Purkiss Affidavit). Document 13 consists of a summary of a conference at which two staff members discussed the draft proposal and a routing slip for the conference memorandum. Document 14 consists of an annotated copy of the draft proposal with a handwritten covering memorandum in which an employee comments on the draft. The draft itself was never published, expressly adopted or incorporated by reference in a final agency opinion, and the memorandum was prepared prior to the decision not to publish.

. (d) Documents 15 through 17 are predecisional deliberations regarding a draft of a proposed Revenue Procedure. (¶¶ 18–20, Purkiss Affidavit). Document 15 records the author's comments thereon, and includes a draft embodying suggested provisions. Documents 16 and 17 are each copies of the draft with covering memoranda. The proposed Revenue Procedure that is the subject of these documents was never published, and the draft proposals were never issued nor expressly adopted or incorporated by reference in a final agency opinion. The memoranda were written prior to the decision not to publish.

█ Thus,[2] the seventeen newly found withheld documents at issue all consist of predecisional deliberative material. They are staff comments, criticisms and recommendations concerning drafts of IRS publications. All were generated in the process of deciding whether to go forward with the proposed publications, and none has ever been expressly adopted or incorporated by reference in any final agency opinion. By the principles established in the July 30, 1980 decision, *see Cliff v. IRS, supra* 496 F.Supp. at 578–81, these documents are exempt from disclosure under § 552(b)(5).

Cliff does not directly contest defendant's contention that the seventeen documents

---

**2.** The Purkiss Affidavit is sufficiently detailed to obviate the need to exercise my discretionary authority, 5 U.S.C. § 552(a)(4)(B) to examine the documents *in camera* before resolving

the question of their exemption. *See Lead Industries Association v. OSHA,* ·610 F.2d 70, 87–88 (2d Cir. 1979); *Cliff v. IRS, supra,* 496 F.Supp. at 572 n.9.

are exempt. Instead, he points to the twenty newly found *released* documents and argues that this material reveals an IRS practice of communicating agency policy and procedure to agents through memoranda on proposed Revenue Rulings and Procedures. In effect, he alleges that the twenty documents demonstrate that defendant is not to be relied on when it characterizes documents as "predecisional" and "deliberative."[3] At best, Cliff's argument raises only general grounds for skepticism about IRS characterizations of documents, for he nowhere attempts to argue that, in terms of their content, the released documents are concerned with the seventeen withheld documents. Even when understood as a general skeptical argument, however, plaintiff's contention is meritless: the twenty documents which, in plaintiff's view, demonstrate IRS unreliability were, in fact, released by the defendant—that is, they are documents as to which the IRS claimed no exemption. Thus, no unreliability in defendant's characterizations, not even of a general sort, is indicated. Accordingly, plaintiff's skepticism affords no basis for the court to reject the IRS' claim that the seventeen documents are exempt.

Beyond his allegations about the seventeen withheld documents, plaintiff has not made the requisite showing to support his various motions. He has supplied no new facts or controlling decisions which would support his motion for reargument under Rule 3(j) of the Civil Rules of the Southern District of New York; no basis on which the previously entered judgment should be altered or amended pursuant to Rule 59(e), F.R.Civ.P.; nor any basis on which relief should be granted from the judgment—other than has already been noted with respect to this action's procedural posture—pursuant to Rule 60, F.R.Civ.P.[4]

At bottom, plaintiff's claim that the original judgment was erroneous relies on two arguments. First, he argues that the twenty newly found documents indicate that defendant acted in bad faith in characterizing the originally disputed documents as exempt. Second, he avers that the newly found documents, together with certain perceived irregularities in the timing of defendant's second search,[5] indicate that de-

---

**3.** It is somewhat baffling that plaintiff has argued along these lines, for he points to no specific document or conversation where the IRS allegedly claimed that the twenty released documents were predecisional and deliberative. Apparently, he understood some event during the negotiations leading up to the September 26, 1980 stipulation and release of documents as a claim by defendant along these lines.

**4.** The standard for warranting an amendment or alteration of a judgment under Rule 59(e) overlaps substantially with that for warranting relief from the judgment under Rule 60(b). *See e.g. Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir. 1978); Wright & Miller, 11 Federal Practice & Procedure, § 2817 (1969). Plaintiff does not specify the bases on which he moves to alter or amend, or for relief from the judgment, but of the six bases enumerated in Rule 60(b) two are at least arguably involved in plaintiff's motion:

"(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);"

and

"(3) fraud ... misrepresentation or other misconduct of an adverse party;"

Rule 60(b), F.R.Civ.P.

**5.** In plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Attorney's Fees, plaintiff outlines a number of issues relating to the IRS's conduct of its search and its conduct of the litigation which, if unexplained, might arguably raise questions about defendant's good faith. These aspects are: (1) that the initial search did not locate and identify all the responsive documents; (2) that while the supplemental search was being conducted the IRS represented to plaintiff that all documents had been located; (3) that the initial search was conducted only in the Office of the Assistant Commissioner (Technical) ("Technical"), but the supplemental search was broadened to include the Appeals, Collection and Examination Divisions of the National Office, and the Office of Chief Counsel; (4) that while the Examination Division forwarded documents to the Disclosure Litigation Division in June, 1980, for preliminary analysis, and while a preliminary analysis of documents from the Office of Chief Counsel was conducted during June and July, the IRS did not indicate to its counsel the possibility that responsive documents could be uncovered before July 25, 1980; (5) that the existence of potentially responsive documents was not formally communicated to plaintiff until August 1, 1980; (6) that the formal representation of thoroughness was not made until October 27, 1980.

fendant cannot be trusted when it claims to have been thorough in searching for documents responsive to plaintiff's request.

Cliff's first argument, concerning the IRS' bad faith in its characterizations of the first set of documents, is untenable. It is the twin to the argument, rejected above, that defendant's characterizations of the seventeen withheld documents are unreliable, and the new argument is as unpersuasive as was the prior argument.

■■■ The IRS has submitted another affidavit by the ubiquitous Ewan Purkiss, the "Thoroughness Affidavit," [6] in response to plaintiff's averments about the completeness of its searches. The Thoroughness Affidavit chronicles both defendant's first and supplemental searches. It outlines their conduct and the decisions relating to their scope and timing, and explains the manner in which the second, supplemental, search was undertaken. The Thoroughness Affidavit disposes of plaintiff's suggestions that the IRS somehow acted in bad faith in conducting the search.[7] This statement is relatively detailed in its treatment of the searches, nonconclusory in description, and

bears every indication of having been submitted in good faith by the IRS. *Cf. Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir. 1978). The Affidavit, therefore is trustworthy, *id.*, and there is no need for me to exercise my discretionary authority to withhold judgment until plaintiff undertakes additional discovery relating to the search. *Id., Nolen v. Rumsfeld*, 535 F.2d 890, 891–92 (5th Cir. 1976), *Exxon Corp. v. FTC*, 466 F.Supp. 1088, 1093 (D.D.C.1978).

In sum, plaintiff has provided no basis for concluding that the original judgment was in some fashion erroneous, and, thus, no basis for altering or amending the judgment, or relieving plaintiff from it, except, as was noted, for the purposes of considering the newly found documents. But the newly found withheld documents are exempt, and summary judgment may be entered for the IRS accordingly, dismissing plaintiff's complaint.

■■ In addition to his motions regarding the judgment, plaintiff has also moved for attorney's fees. Under the Act, the court may assess reasonable attorney's fees

---

6. Dated October 27, 1980.

7. As the Thoroughness Affidavit explains, the initial search was conducted in the Office of the Assistant Commissioner (Technical), which was searched because "it is the National Office primarily responsible for the promulgation of Revenue Procedures" and because it "maintains background files on the Revenue Procedures." (Thoroughness Affidavit ¶ 4). Technical was, in fact, searched a second time. (¶ 6) To supplement the initial searches of Technical, the Disclosure Litigation Division ("Disclosure") instructed the Director of the Appeals, Collection, and Examination Divisions of the National Office to search for documents responsive to plaintiff's request. A search was also conducted of the Office of Chief Counsel. (¶ 7). Neither the Appeals Division nor the Collection Division discovered any additional responsive documents (¶¶ 9 and 11 respectively). The Examination Division forwarded documents to Disclosure on two occasions in June (¶ 13) and Disclosure conducted a preliminary analysis of these documents "to determine whether they were indeed responsive and, if responsive, whether they were exempt." (¶ 14). This preliminary analysis was completed on July 25, 1980, (¶ 14) and defendant's counsel was notified at that time of the existence of potentially responsive documents. The

preliminary analysis was the subject of further agency review, and a final decision with regard to these documents was not reached until late August, 1980 (¶ 14). Potentially responsive materials were found in the Office of the Chief Counsel in June and July, and were subjected to a preliminary analysis by Disclosure which was completed on July 25, 1980. (¶ 16). This preliminary analysis was also the subject of further agency review, which was completed in mid-October. (*Id.*)

Thus, the Thoroughness Affidavit reveals that the existence of potentially responsive documents was communicated by the agency to its counsel upon the completion of the preliminary analysis and before the court handed down its opinion on July 30, 1980. The agency communicated the results of its preliminary analysis to its counsel on July 25, 1980. While defendant's counsel did not communicate that information to plaintiff until August 1, 1980, there is no reason to infer that the delay by defendant's counsel in communicating with plaintiff was calculated. As defendant's counsel states in a letter to plaintiff's counsel dated October 10, 1980, he was on vacation in August and did not learn of the court's decision until August 25. *See* letter of J. D. Pope, plaintiff's Notice of Cross-Motion, Ex. 3.

against the agency only when the complainant "has substantially prevailed." § 552(a)(4)(B). If the complainant has substantially prevailed, it is within the court's sound discretion whether to award fees. *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976); *Kaye v. Burns*, 411 F.Supp. 897, 903 (S.D.N.Y.1976) (Carter, J.).

While rendering judgment in plaintiff's favor is not essential for an award of fees, the most recent interpretation by the Second Circuit of the meaning of "substantially prevails" requires a complainant to show

at a minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had a substantial causative effect on the delivery of the information.

*Vermont Low Income Advocacy Council, Inc. v. Usery, supra* at 513. Thus, as the Second Circuit has interpreted this requirement, a threshold condition for an award of attorney's fees is that documents sought by plaintiff were wrongfully withheld by the agency, and subsequently released as a result of the law suit. In the case at hand, however, the only documents to have been released were the twenty newly found documents, and in the parties' stipulation of September 26, 1980, plaintiff agreed not to rely on the release of those twenty documents as the basis for an application for attorney's fees. No other documents can be said to have been released as a result of the action.

Plaintiff contends for a broader interpretation of the requirement—namely that he has substantially prevailed inasmuch as the IRS' initial search was inadequate to comply with the Act and that the litigation has compelled the IRS to comply by undertaking the supplemental search. In making this argument plaintiff relies chiefly on a

more recent remark by the Court of Appeals for the District of Columbia Circuit in *Halperin v. Department of State*, 565 F.2d 699 (D.C.Cir.1977):

Appellee, by virtue of his persistence, has at least benefitted the nation by making the Department aware of the laws it must observe if these adventures are to be continued. It would thus appear that appellee has, irrespective of the outcome of the proceeding on remand, "substantially prevailed within the meaning of 5 U.S.C. § 552(a)(4)(E) (Supp. IV 1974) relating to assessment against the United States of litigation expense, thereby fulfilling one of the conditions for the invocation of possible disciplinary proceedings under 5 U.S.C. § 552(a)(4)(F) (Supp. IV 1974).

*Id.* at 706 n.11.[8] The full context of the Court's remark in *Halperin* makes it doubtful that the pertinent passage is authority for awarding *this* plaintiff fees. Not only is the remark a digression on the court's part, but it is clearly intended to suggest disciplinary proceedings and not an award of fees. Furthermore, on this theory, plaintiff would have to be found to have substantially prevailed when, in the discussions between the parties to submit cross motions for summary judgment, the IRS agreed to undertake an affirmation of thoroughness in its search for responsive documents. This, in turn, would entail a showing by plaintiff that the IRS' initial search was in violation of the law and that the litigation has a "substantially causative effect" on the IRS' subsequent compliance. *Vermont Low Income Advocacy Council, supra.*

Whether the plaintiff's interpretation of the Act is tenable, and whether he has made the requisite showing to support a conclusion that he has substantially prevailed even on his interpretation, are questions that need not be reached in order to

---

**8.** *Cf. also Marschner v. Dept. of State*, 470 F.Supp. 196 (D.C.Conn.1979): where the government "simply delayed in disclosing the requested documents," then

Absent an explanation or justification for the delay, however, the policy considerations that have led other courts to the conclusion

that an FOIA plaintiff has substantially prevailed when an agency voluntarily abandons an objection lead this Court to conclude that a plaintiff substantially prevailed when the defendant agency voluntarily ceases an unexplained delay in making disclosure. *Id.* at 200.

resolve the instant motion for fees. For, even if plaintiff has substantially prevailed within the meaning of the Act, that does not compel an award of fees, but rather places the award within the discretion of the court.

[T]he criteria to be considered by the court in exercising its discretion [include]:

(1) the benefit to the public, if any deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the record sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law.

*Kaye v. Burns, supra* at 903. *See also Vermont Low Income Advocacy Council, Inc. v. Usery, supra*, 546 F.2d at 512–513; *Marshner v. Dept. of State*, 470 F.Supp. 196, 201 (D.C.Conn.1979).

▮ Relying on these criteria as a guide, I conclude that it would be inappropriate to award fees to this plaintiff. He is a partner in a major Wall Street law firm. He seeks these materials to assist him in advising his clients who are represented by plaintiff in a tax court proceeding in which the clients seek a refund of more than 18 million dollars. Thus, the potential benefit to the complainant and his interest in the records is overwhelmingly commercial, and the potential benefit to the public is minimal at best. Moreover, even on plaintiff's alternative interpretation of "substantially prevails," where the government's inadequate first search would be held to constitute a violation of its duty under the Act, the Thoroughness Affidavit indicates that the IRS was acting within a colorable interpretation of its obligations in conducting its initial search. Accordingly, I conclude that this is not a case where Congress intended attorney's fees to be awarded. Plaintiff's motion, therefore, is denied.

IT IS SO ORDERED.