Gail G. BILLINGTON, Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Defendant.

No. CIV.A. 92–0462(RCL).

United States District Court, District of Columbia.

Feb. 4, 2004.

ing accompanies this Memorandum Opinion.

Gail G. Billington, Leesburg, VA, Plaintiff, Pro Se.

Diane M. Sullivan, Assistant United States Attorney, United States Attorney's Office, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the Court on both defendant's and plaintiff's motions to reconsider pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Upon consideration of both defendant's and plaintiff's motions, their oppositions thereto, their replies, and the applicable law in this case, the Court finds defendant's motion should be granted in part and denied in part. It further finds plaintiff's motion should be denied in its entirety.

Also before the Court is defendant's renewed motion for summary judgment. Upon consideration of defendant's motion, plaintiff's partial opposition thereto, the record, and the applicable law in this case, the Court finds defendant's motion should be granted in part and denied in part.

## I. BACKGROUND

This case has a long history. Plaintiff first filed her complaint on February 24, 1992 under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). Since then, there has been a steady stream of motions, memoranda and orders. The Court need not belabor the history here, in what it hopes will be this case's final disposition. It is assumed the parties know the procedural and factual history of this litigation.[1]

As for historical matters of a more recent vintage, this Court granted defendant's motion for leave to submit declarations *in camera* on July 24, 2003. The Court found that the declarations were central to defendant's argument that the much disputed "Notes on Interview"[2]

---

1. This opinion is a cumulative product. It necessarily incorporates the Court's February 14, 2003 and July 24, 2003 opinions by reference.

2. The "Notes" have been assigned the identification number FBIHQ 100–457751–1350.

(hereinafter "Notes") were properly withheld under FOIA and that the journalist author of the "Notes" gave them to the State Department official, who then gave it to the FBI, with the understanding of confidentiality, i.e., his or her identity and "Notes" would not become public. The journalist is also referenced in another document at issue known as NCLC Document 27 (hereinafter NCLC 27). In addition, defendant was granted leave to submit an *in camera* declaration of another informant identified in NCLC Document 92 (hereinafter NCLC 92).

The Court received defendant's *in camera* declarations on August 7, 2003. As instructed by the July 24 opinion, the Government also filed a detailed statement covering each discrete portion of the declarations and explained why the portion had to be provided *in camera.*

Prior to the *in camera* filing, defendant moved for a renewed finding of summary judgment on behalf of the FBI on July 15, 2003. Defendant asserts it reprocessed and released Schiller documents 7 and 9 in relation to information previously withheld under Exemption 7(D); properly applied Exemption 7(C) to NY–196B–4052; PH–196–1989; and PH–196B–1893 in relation to information previously withheld pursuant to Exemption 7(D); and performed a segregability analysis as to documents NY–196B–4052; PH–196–1989; and PH–196B–1893. (Def.'s Renew. Summ. J. Mot. at 9–20.) Plaintiff filed a partial opposition to defendant's renewed summary judgment motion on July 28, 2003 claiming that nothing substantive was disclosed after the reprocessing. (Pl.'s Opp'n Def.'s Renew. Summ. J. Mot. 2–6.) Therefore, plaintiff concludes summary judgment would be inappropriate.

Defendant also filed a Rule 60(b) motion to reconsider on April 28, 2003. Defendant prayed the Court reconsider its February 14 ruling that NCLC 27 and "Notes"

were not properly withheld under Exemption 6 and that the informant identified in NCLC 92 was not protected from public disclosure under Exemption 7(D). Plaintiff, too, filed a Rule 60(b) motion to reconsider on May 12, 2003. Plaintiff prayed the court reconsider a list of individuals who waived their privacy rights in consideration of plaintiff's FOIA request and the Court amend its ruling to include disclosure of those individuals' information in the documents. On August 28, 2003, the D.C. Circuit Court ordered, on its own motion, that the parties' appeals be held in abeyance pending its further order. The parties were directed to file motions to govern future proceedings within 30 days of this Court's disposition of the Rule 60(b) motions to reconsider. The Court takes up these motions, defendant's renewed motion for summary judgment and plaintiff's opposition thereto.

## II. ANALYSIS

### A. Motions to Reconsider Pursuant to Rule 60(b)

By order of the D.C. Circuit on August 28, 2003, this Court will decide both parties' motions for reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Defendant moved this Court to reconsider its ruling that document NCLC 27 and the journalist's "Notes on Interview" were not protected by Exemption 6 and that the identity of the informant identified in NCLC 92 was not protected by Exemption 7(D). Rule 60(b) allows the district court to relieve a party from a judgment for several reasons such as "mistake, inadvertence, surprise, or excusable neglect ... or any other reason justifying relief be made from operation of the judgment." The district court is "vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." *Computer*

*Prof'ls for Soc. Responsibility · v. Secret Service,* 72 F.3d 897, 903 (D.C.Cir.1996). Rule 60(b) preserves ."the delicate balance between the sanctity of final . . . judgments and the incessant command of the court's conscience that justice by done in the light of all the facts." *Good Luck Nursing Home, Inc., v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980) (quoting *Bankers Mortgage Co., v. United States,* 423 F.2d 73, 77 (5th Cir.1970)).

As noted, the parties have been litigating various FOIA issues since 1992. The Court is eager to put this litigation to rest and is not thrilled· about reconsidering its February 14 order. Nevertheless, the Government asserts it is protecting third party interests. Against · this backdrop, the Court gave both defendant's and plaintiff's motion to reconsider, and subsequent oppositions thereto, due attention. The Government argues the Court should not sacrifice third party privacy interests in this litigation because the Government's explanation for its exemptions were inadequate. (Def.'s Mot. Recon. under Rule 60(b) at 5.)

### 1. "Notes on Interview" and NCLC 27

■ In *Computer Prof'ls for Soc. Responsibility v. Secret Service,* 72 F.3d 897, 903 (D.C.Cir.1996), the D.C. Circuit took up a Rule 60(b) motion concerning the interests of a third party whose identity and information were protected under FOIA. The D.C. Circuit found that it was "incumbent on the [district] court to examine the second *in camera* submission in order to determine whether its ruling on the Exemption 7(D) issue had been based

on a correct understanding of the underlying facts." *Id.* The instant case presents a similar issue. The Court's February 14 opinion was clear about the public interest involved with respect to the. "Notes"and NCLC 27, and that analysis is incorporated here by reference. However, that opinion was prepared prior to the "Notes" author submitting an *in camera* affidavit. The journalist declares cooperation with the State Department and.FBI was done with the understanding that the "Notes" and his or her identity. would be kept confidential. This language speaks directly to Exemption 7(D), yet the Government invoked Exemption 6 with respect to the journalist and the "Notes." Under the facts of this case, the distinction is immaterial. Upon reconsideration, the Court finds the Government did properly invoke Exemption 6.[3] However, the protection offered by this Exemption is limited and does not cover the "Notes" in their entirety.

■ Exemption 6 protects information about individuals contained in "personnel and medical files and similar files the disclosure· of which ·would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § (b)(6). All information that relates to an individual qualifies for consideration under this Exemption. *Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). This Exemption should only be employed when the privacy interest at stake outweighs the public interest in disclosure. Accordingly, the courts must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny."

**3.** Plaintiff argues the Government's Rule 60(b) motion should be denied because defendant does not explicitly state the subsection the motion is predicated upon. (Pl.'s Opp'n Def.'s Rule 60(b) Mot. at 5.) While it is true the Government's motion does not specify under which subsection relief is sought, the

"courts have treated [Rule 60(b) motions] as invoking such subdivisions as may be pertinent to the dispute." *Combs v. Nick Garin Trucking,* 825 F.2d 437, 441 n. 31 (D.C.Cir. 1987). Thus, this argument carries no weight.

*U.S. Dep't of State v. Ray*, 502 U.S. 164, 175, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)) (internal punctuation omitted). The February 14 opinion made clear that the Court was unpersuaded by the Government's assertions that the journalist's identity and the "Notes" in their entirety were properly withheld under Exemption 6. For a good portion of the "Notes", this remains true. However, in light of the journalist's *in camera* affidavit, the Court reconsiders its position.

The journalist asserts the "Notes" were personal notes, which were taken at a private meeting. As the Government points out, and the document confirms, the "Notes" contain substantial commentary that reflect the personal thoughts and ideas of the journalist. When handing the "Notes" to a State Department official, the journalist did not intend nor expect them to become public. The journalist further asserts that when the FBI was furnished with the "Notes", it was permissible provided that they were not disclosed outside the FBI. This indicates the journalist would not have furnished copies of the "Notes" had there existed the possibility of public disclosure. The journalist's private thoughts contained in the "Notes" and his or her understanding that the "Notes" would not be made public implicate a strong privacy interest. *Cf. Bureau of National Affairs, Inc., v. DOJ*, 742 F.2d 1484, 1494 (D.C.Cir.1984) (examining the nature of agency records within the purview of FOIA's policy goals and holding that disclosing hand-written personal notes

in a FOIA action "would *invade the privacy* of and impede the working habits of individual staff members ...") (quoting *Porter County Chapter of the Izaak Walton League, v. AEC*, 380 F.Supp. 630, 633 (N.D.Ind.1974)) (emphasis added). The legitimacy of the journalist's privacy interest, bolstered by the expectation of confidentiality, is sufficient for this Court to find that the journalist's identity, and information that could lead to his or her identity, not be revealed.[4] *See Lesar v. DOJ*, 636 F.2d 472, 488 (D.C.Cir.1980) (stating those who cooperate with law enforcement should not be punished by releasing their personal information).

Furthermore, the journalist fears that if his or her identity becomes public there will be retaliation by the Lyndon LaRouche organization or its followers. The journalist is not the first informant to harbor such fears. More importantly, the journalist's fear of reprisal is not merely speculative but substantial. The declaration speaks of the journalist's personal experience with a LaRouche follower indicating there is more than enough cause for concern. FOIA does not compel disclosure when there is a "substantial probability that disclosure will cause an interference with personal privacy." *Linn v. DOJ*, No. CIV.A.92–1406, 1995 WL 631847, at *20 (D.D.C. Aug.22, 1995) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 n. 19, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)) (internal quotations omitted). Therefore, revealing the journalist's identity would constitute a "clearly unwarranted invasion of personal privacy."[5] 5 U.S.C. § (b)(6).

---

4. Plaintiff's Rule 60(b) motion is denied as a result of this ruling. Although plaintiff received privacy waivers from individuals who may be implicated in this document, the Court finds that releasing the identities of any of these individuals could result in the identification of the journalist.

5. The Court's February 14, 2003 opinion reached an antithetical conclusion. This conclusion was informed-or rather not informed-by the Government's arguments only, not the declaration of the journalist. Reconsidering the journalist's privacy interest under Rule 60(b) satisfies "the incessant command of the court's conscience that justice by done in the

Although the journalist maintains a strong privacy interest, the Court's February 14 opinion does not wither away, lonely and isolated, in the bounded annals of the *Federal Supplement* because of these new facts. The public interest announced remains: The "Notes" shed light on the State Department and FBI's performance of statutory duties and compliance with the law. The Court has reviewed the "Notes" again, conducted a segregability analysis and redacted that which could identify the journalist. The Court has given the Government back the "Notes" with segments stricken. All the parenthetical information that represents the journalist's personal thoughts on the interview has been stricken, as well as names and dates which could lead to the journalist's identity. The blacked out portions of the "Notes" represent material properly withheld under Exemption 6. The Government will disclose all other portions to plaintiff.[6] *Steinberg v. DOJ*, 179 F.R.D. 366, 372 (D.D.C.1998) (upon *in camera* review striking segments properly withheld under FOIA exemptions and releasing all other materials to plaintiff).

With regard to the FBI cover memorandum labeled NCLC 27, the Government properly withheld it under Exemption 6. Upon *in camera* review of the full documents and the redacted versions thereof, the Court is satisfied the Government properly withheld the redacted informa-

tion. The redactions comport with the reasoning of this opinion.

### 2. NCLC Document 92

NCLC 92 is a six page memorandum describing two individuals at FBI headquarters regarding the activities of the NCLC. (Def.'s Renew. Summ. J. Mot. at 17.) The FBI applied Exemption 7(D) to this document. In its July 24 opinion, this Court allowed defendant to submit declarations *in camera* of the sources identified in NCLC 92. The *in camera* submissions are central to defendant's argument that the three documents were properly exempt under Exemption 7(D).

 Exemption 7(D) protects from disclosure those "records or information compiled for law enforcement purposes that .could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances sup-

---

light of all the facts." *Good Luck Nursing Home, Inc., v. Harris*, 636 F.2d 572, 577 (D.C.Cir.1980) (quoting *Bankers Mortgage Co., v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)).

**6.** The Court's July 24, 2003 opinion and order granting defendant's motion for leave to submit declarations *in camera* instructed the Government to submit with each of its *in camera* declarations a detailed statement covering each discreet portion of the declaration justifying why the portion had to be provided *in camera*. Consistent with the D.C. Circuit's

admonishment that district courts should "make as much as possible of the *in camera* submission available to the opposing party", the Court has released the Government's detailed statement regarding the journalist's *in camera* declaration with segments stricken. *Armstrong v. Executive Office of the President* 97 F.3d 575, 580 (D.C.Cir.1996). The blacked out portions of the Government's declaration represent material properly withheld under Exemption 6. See the Court's analysis of NCLC 92 for more detailed reasoning behind this ruling.

port an inference of confidentiality. *DOJ v. Landano*, 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). The relevant inquiry is "not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *Id.* at 172, 113 S.Ct. 2014. Exemption 7(D) has long been recognized as affording the most comprehensive protection of all of FOIA's law enforcement exemptions. *Voinche v. FBI*, 940 F.Supp. 323, 331 (D.D.C.1996) (citing *Irons v. FBI*, 880 F.2d 1446, 1452 (1st Cir.1989) (en banc)). After reviewing the affidavit of the informant referenced in NCLC 92 *in camera*, the Court finds that the Government has properly invoked Exemption 7(D) with respect to this document. The *in camera* submission confirms that the source implicated in NCLC 92 was assured an express grant of confidentiality when he spoke with the FBI. The source unequivocally avers that speaking with the FBI was done with the full understanding the meetings would be treated as confidential. Therefore, the Government properly withheld the source's identity under Exemption 7(D).[7] *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C.Cir.1998) (evidence of an express grant of confidentiality can take the form of a statement by the source). The discussion, however, does not end with this ruling.

The D.C. Circuit in *Armstrong v. Executive Office of the President*, 97 F.3d 575, 580 (D.C.Cir.1996), stated that "when a district court uses an in camera affidavit, it must makes its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party." This ensures the use of affida-vits *in camera* have "the smallest possible negative impact on the effective functioning of the adversarial system." *Id.* at 580–81. The Court's July 24 opinion on defendant's motion for leave to submit declarations *in camera* enumerates its reasons for granting the motion. Now the Court takes up the issue of minimizing harm to the adversarial system by making as much available to the opposing party as possible. The Court has given the Government back its statement concerning the *in camera* declaration of the source implicated in NCLC 92 with segments stricken. (*See* fn 6, *supra*). The blacked out portions of the Government's detailed statements represent material properly withheld under Exemption 7(D). The Government will disclose all other portions to plaintiff. *Steinberg*, 179 F.R.D. at 372.

## B. Renewed Motion for Summary Judgment

Defendant asserts it is entitled to summary judgment because it complied with this Court's February 14 order. It reprocessed and released Schiller documents 7 and 9 in relation to information previously withheld under Exemption 7(D); properly applied Exemption 7(C) to NY–196B–4052; PH–196–1989; and PH–196B–1893 in relation to information previously withheld pursuant to Exemption 7(D); and performed a segregability analysis as to documents NY–196B–4052; PH–196–1989; and PH–196B–1893. (Def.'s Renew. Summ. J. Mot. at 9–20.)

### 1. Standard of Review

■ Summary judgment in a FOIA action is appropriate when the pleadings, together with the declarations, show there

---

7. The Court finds it noteworthy that both the source identified in NCLC 92 and the journalist who authored "Notes" both express common concerns that if their identities were to be released LaRouche followers would possibly harass, intimidate, or seek some form of retribution because of their collaboration with the FBI.

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Alyeska Pipeline Serv. Co. v. EPA,* 856 F.2d 309, 313 (D.C.Cir.1988) (mere conflict in affidavits not sufficient to preclude an award of summary judgment); *Weisberg v. DOJ,* 627 F.2d 365, 368 (D.C.Cir.1980). If the agency proves that it has fully discharged its FOIA obligations by showing "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements", then summary judgment is warranted. *National Cable Television Ass'n, Inc., v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973). Agencies may rely on the declarations of their officials in order to sustain their burden of proof in a FOIA case. *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990). A plaintiff must proffer proper evidence to support a claim that an exemption has been improperly asserted in order to have a triable issue of material fact that will preclude awarding summary judgment to the defendant. *See Bennett v. Spear,* 520 U.S. 154, 168, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

## 2. Segregability Discussion

The Government maintains that it conducted a proper segregability analysis of the documents at issue by engaging in a line by line review of the material. (Def.'s Renew. Summ. J. Mot. at 19.) Plaintiff, not surprisingly, disagrees and contends that the Government has not been responsive to this Court's February 14 order and produced little, if anything, of value in terms of releasable material. (Pl.'s Opp'n Def.'s Summ. J. Mot. at 3–4.) Plaintiff further contends that the Government's overall segregability analysis is inadequate to meet its burden. *Id.* at 5.

█ FOIA commands that "[a]ny reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 522(b). The D.C. Circuit firmly established that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exemption portions." *Trans–Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1027 (D.C.Cir.1999) (citing *Mead Data Cent., Inc., v. U.S. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977)). The agency must provide a "detailed justification" for its non-segregability in order to evidence that all reasonably segregable material has indeed been released. *Mead Data,* 566 F.2d at 261. The agency's justification, however, need not be so detailed so as to render the exempt information essentially disclosed. *Id.* If the agency can show with reasonable specificity why material could not be segregated, it meets its burden under FOIA. *Armstrong v. Executive Office of the President,* 97 F.3d 575, 579 (D.C.Cir.1996). Here, plaintiff contends that the documents labeled N.Y. 196B–4052, document 3, PH 196–1989, document 1[8], and PH196B–1893, document 4, all reprocessed by the FBI, reveal nothing

8. As plaintiff pointed out in her opposition memorandum, there is a labeling error with respect to PH 196–1989. The Court has this document labeled as PH 196–1989, Document 1 because the information submitted by defendant has it labeled as such. However, on the FBI's deleted page sheet, which indicates the FOIA exemption that was invoked pursuant to the deletion, the document is referred to as PH 196 B–1893–1. For functional purposes, the Court will continue to refer to the document as PH 196–1989. Both parties in this litigation now have notice of the error and are aware of the document the Court is referring to when it cites to PH 196–1989.

but words and phrases that are essentially useless and thus do not comport with the spirit of this Court's February 14 order. In light of plaintiff's assertions, the Court inspected the documents initially released to plaintiff and compared them with. the reprocessed ones.

■ After completing its inspection, the Court agreed with plaintiff that, in effect, nothing was released. The document labeled NY196B–4052 is representative of the Government's reprocessing efforts. All the FBI chose to release was "According to . . . a . . . of . . . also . . . in the . . . of . . . regarding . . . the. . . ." This is meaningless dribble. A sentence adverb and some unredacted articles and prepositions add nothing substantive to the document at issue. While this is technically "new" material, the segment of the document remains incomprehensible and discloses, as plaintiff contends, nothing. It is possible, however, that the documents are properly redacted and the Government has again inadequately described why the redactions are necessary. Rather than order the documents released to compensate for the collective judicial frustration this enduring action has caused, the Court ordered the Government to submit the disputed documents for *in camera* inspection.

The Government submitted N.Y.196B–4052 in its entirety to the Court. As to PH196–1989, the Government informed the Court that the original was destroyed on November 3, 1988. With respect to PH 196–1893, the Government has not been able to locate the original since 1997.[9] The Government submitted copies of the documents accompanied by the redactions that were released to plaintiff. However, both documents PH 196–1893 and PH196–1989 each contain a page that has not been redacted. The Court reviewed this material, which was essentially redacted in its entirety when reprocessed and released to plaintiff, and conducted a segregability analysis. The Court also conducted a segregability analysis of Document N.Y.196B–4052.

After reviewing the documents *in camera*, the Court finds there is additional information that should be released to plaintiff. All personal identifying information, such as names, addresses, and certain dates, that the Government redacted remains redacted under Exemption 7(C) and comports with the Court's February 14 opinion. The additional information not properly withheld under Exemption 7(C) illustrates the kind of information the FBI had a probing interest in while investigating the LaRouche organization. Releasing this material serves FOIA's purpose of "contribut[ing] significantly to public understanding of the operations or activities of the government." *Barholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C.Cir.1997) (citing *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994)). Therefore, the Court has stricken the segments that were properly withheld under Exemption 7(C). All other information shall be released to plaintiff. *Steinberg*, 179 F.R.D. at 372.

### 3. PGM Document 2 (serial 196B–SI–43487–1A–2)

Plaintiff asserts the Government has made improper redactions under Exemp-

---

9. While plaintiff will no doubt find the Government's destruction of the original PH196–1989 document troubling, it is settled that FOIA "only obligates agencies to provide access to those documents in its possession." *Green v. Nat'l Archives & Records Admin.*, 992 F.Supp. 811, 818 (E.D.Va.1998). As for the missing PH 196–1893 original, plaintiff should further understand that "production of missing records . . . is not within the purview of [FOIA]." *Nolen v. Rumsfeld*, 535 F.2d 890, 891 (5th Cir.1976). Therefore, the Court is satisfied with the Government's release of the copies of these documents. Summary judgment for defendant is not precluded as a result.

tion 7(C) with regard to PGM Document 2 (serial 196B–SI–43487–1A–2). The two Dun & Bradstreet reports contained in this document reference companies and services. The Government redacted their names, addresses, telephone numbers and other information about them. (Pl.'s Opp'n Def.'s Summ. J. Mot. at 5.) The issue is now moot. Upon re-review, the Government determined that the information plaintiff sought here no longer warranted protection. The Government filed the three page document with the Court on August 27, 2003 and likewise sent it to plaintiff. The information plaintiff sought was released to her. The only redactions left on the Dun & Bradstreet report are those protecting third party names and the name of one FBI Special Agent. Plaintiff does not object to these redactions. (Pl.'s Opp'n Def.'s Summ. J. Mot. at 5.) Therefore, this document is no longer in dispute.

## III. CONCLUSION

For the reasons stated above, the Court will grant defendant's Rule 60(b) motion to reconsider in part and deny it in part. Plaintiff's Rule 60(b) motion is denied. Defendant will release to plaintiff the "Notes" in their entirety, save for the Court's redactions. Defendant's affidavits concerning the journalist of the "Notes" and the source implicated in NCLC 92 will also be released to plaintiff with the Court's redactions. As for NCLC 27, defendant properly withheld the information under Exemption 6 and no further material need be released to plaintiff. With regard to defendant's renewed motion for summary judgment, the Court finds defendant is entitled to summary judgment with respect to the identifying information of persons named in N.Y.196B–4052, PH 196–1989, and PH196B–189; the Court's redactions reflect this judgment. Defendant's motion regarding all other material in these documents is denied. All other available information from these documents shall be released to plaintiff. A separate order consistent with this opinion shall issue this day.

## *ORDER*

Upon consideration of both defendant's and plaintiff's motions to reconsider pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, their oppositions thereto, their replies, the applicable law, and the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that defendant's motion for relief from judgment be **GRANTED** with respect to the identity of the journalist author of the "Notes on Interview" and the source identified in NCLC Document 92.

It is further **ORDERED** that defendant release to plaintiff the "Notes on Interview" in their entirety except for the portions of the document the Court has redacted.

It is further **ORDERED** that defendant release to plaintiff the defendant's detailed affidavits regarding the journalist author of the "Notes on Interview" and the source identified in NCLC Document 27 except for the portions the Court has redacted.

It is further **ORDERED** that plaintiff's Rule 60(b) motion is **DENIED**.

It is further **ORDERED** that defendant's summary judgment motion regarding identifying information of persons named in documents N.Y.196B–4052, PH 196–1989, and PH196B–1893 is **GRANTED**. With respect to all other information available from these documents that the Court has not redacted, defendant's motion is **DENIED**. Defendant is **ORDERED** to release all other available information contained in these documents to plaintiff

This case now stands dismissed with **PREJUDICE.**

**SO ORDERED.**